IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01828-PAB

PAUL SMITH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on plaintiff Paul Smith's complaint [Docket No. 1] filed on July 11, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner")[1] denying plaintiff's claim for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On February 22, 2011, plaintiff applied for disability benefits and supplemental security income under Titles II and XVI of the Act. R. at 11. Plaintiff alleged that he had been disabled since July 21, 2010. *Id.* After an initial administrative denial of his claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

June 4, 2012.  *Id.*  On June 15, 2012, the ALJ issued an order denying plaintiff's claim. *Id.* at 18.

The ALJ found that plaintiff had the severe impairment of "status post pacemaker."  R. at 13.  The ALJ found that this impairment did not meet one of the regulations' listed impairments, *id.* at 14, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that [plaintiff] requires work which allows him only to sit and is not exposed to ladders, scaffolds, unprotected heights or hazardous work areas."  *Id.*  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  *Id.* at 17.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.

1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) not assessing the testimony of plaintiff's cousin, who appeared as a lay witness at his hearing; (2) failing to assess the

frequency of plaintiff's dizziness and fainting, leading to an incomplete RFC finding; (3) improperly rejecting the opinion of plaintiff's treating physician; (4) improperly assessing the credibility of plaintiff's testimony; and (5) failing to assess whether the jobs identified by the VE exist in significant numbers.  Docket No. 15.

The relevant evidence of record is as follows.  In early 2011, plaintiff had a pacemaker implanted by Dr. Stephen MacKerrow due to dizziness and syncope[2] which plaintiff had suffered for "months to years" before the procedure.  R. at 325.  Shortly after receiving the pacemaker, plaintiff reported that his symptoms had resolved and he felt "like a new man."  *Id.*  However, a few months later plaintiff reported dizziness and fatigue with extreme exertion.  *Id.* at 324.

In June 2011, plaintiff's parents brought him to the emergency room due to concern over recurrent episodes of loss of consciousness.  R. at 284.  Plaintiff was hospitalized for a period of three days.  *Id.* at 282.  During his hospital stay, plaintiff's treaters did not identify any precise cardiac or neurological cause for his syncopal episodes.  *Id.* at 282.  On June 30, 2011, the day after his discharge from the hospital, plaintiff returned to the emergency room and reported that he had once again passed out.  *Id.* at 272.  When plaintiff attempted to stand up supported by a nurse and his father, he "collapsed without any premonition" and lost consciousness for approximately 30-45 seconds.  *Id.* at 276.

On July 1, 2011, plaintiff underwent a "tilt table test."  R. at 281.  Fifteen minutes into the test plaintiff had a "frank syncope" and experienced a "complete loss of

---

[2]"Syncope" is "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow."  Stedman's Medical Dictionary syncope (27th ed. 2000).

consciousness." *Id.* This resulted in an abnormal tilt table test that showed evidence that plaintiff had a "vasodepressor syncope."[3] During a follow-up visit, Dr. MacKerrow noted that while he had hoped the pacemaker would alleviate plaintiff's syncope, "[o]bviously the problem is more complicated, and the syncope appears to be due to a problem with vasomotor tone." *Id.* at 322. Dr. MacKerrow indicated that a medication called Proamatine could potentially benefit plaintiff, but that plaintiff could not afford the drug. *Id.* at 323. Dr. MacKerrow indicated that he would research the possibility of obtaining free samples, but that in the meantime he advised plaintiff to get up slowly, drink lots of fluids, and take ibuprofen. *Id.* On November 1, 2011, plaintiff again went to the emergency room following a syncopal episode while riding his bike. *Id.* at 256.

On May 24, 2011, state agency physician Robert Greenheck filled out a RFC assessment. R. at 46-50. Dr. Greenheck opined that plaintiff was capable of lifting 25 pounds frequently and 50 pounds occasionally, could stand and/or walk about six hours in an eight-hour workday, could never climb ladders and should avoid concentrated exposure to heights, fumes, and extreme temperatures, but could otherwise operate free from limitations. *Id.* at 47-48.

At the hearing, plaintiff testified that he passes out 40 to 55 times a day when he goes from a kneeling or a sitting position to a standing position, R. at 27, and that he "hits the ground" at "least five times a day." *Id.* He said that he never goes from a sitting position to a standing position without having something go wrong. *Id.* at 28. Plaintiff's cousin testified that he sees plaintiff approximately every other day, *id.* at 30,

---

[3]A "vasodepressor syncope" is "faintness or loss of consciousness due to reflex reduction in blood pressure." Stedman's Medical Dictionary syncope (27th ed. 2000).

6

and that he had witnessed plaintiff lose consciousness "no less than 200 times" over the four years preceding his testimony.  *Id.* at 32.

### 1. The ALJ's RFC Determination

Plaintiff argues that the ALJ failed to account for plaintiff's limitations when the ALJ found that plaintiff had an RFC for sedentary work with the additional limitation that the work must be done exclusively in the seated position.  Docket No. 15 at 12-13.

Plaintiff first argues that the ALJ erred in not considering whether the frequency of plaintiff's fainting spells precluded him from performing sedentary work, since the VE testified that no employer would tolerate more than two episodes of fainting per year. Docket No. 15 at 12-13 (citing R. at 36).  Defendant responds that the ALJ properly discounted the opinion of plaintiff's medical providers that plaintiff blacked out multiple times per day.  Docket No. 16 at 14.

While the ALJ gave little weight to Dr. MacKerrow's opinion that plaintiff blacks out two times per day, R. at 15, the ALJ did not find that plaintiff experiences *no* fainting spells.  In fact, the ALJ acknowledged that plaintiff's "intermittent fainting" imposed limitations on his ability to work, and "keep[s] him from performing light to very heavy work as [plaintiff] is accustomed to doing."  *Id.* at 16.  However, the ALJ never related the limitation of "intermittent fainting" to the VE.  *Id.* at 34-36.  Upon questioning from plaintiff's attorney, the VE testified that employers in the jobs he identified would tolerate fainting spells from their employees "twice a year, at most."  *Id.* at 36.  Having found that plaintiff experiences some intermittent fainting that limits his ability to work, the ALJ erred when he failed to relate the limitation of "intermittent fainting" in any of his

hypothetical questions to the VE. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision." *Westmoreland v. McMahon*, 2007 WL 2900284 at *5 (D. Kan. Sept. 5, 2007) (citations omitted). The ALJ further erred when he concluded based on the VE's testimony that plaintiff was capable of performing work that existed in substantial numbers in the national economy. *Lambiase v. Astrue*, No. 07-cv-02121-PAB 2009 WL 812152 at *6 (D. Colo. March 27, 2009) (holding that an ALJ's decision that the claimant could perform alternate work was not supported by substantial evidence where the VE testified that the claimant's acknowledged limitations would "likely preclude work").

Plaintiff next argues that, to the extent the ALJ attempted to fashion an RFC that eliminated the risk of syncopic episodes by requiring that plaintiff perform work entirely in a seated position, the ALJ's proposed solution is "a simplistic approach that does not fit the realities of the workplace." Docket No. 15 at 23. Plaintiff argues that no work could ever possibly eliminate the need to stand and cites the Commissioner's own description of a work day as including "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." *Id.* (citing SSR 96-9p, 1996 WL 374185 at *6 (July 2, 1996)). Defendant responds that "limiting plaintiff to a job that occurs in a seated position does not preclude Plaintiff from going to the restroom or taking meal breaks." Docket No. 16 at 13. However, as plaintiff argues, even an entirely seated job will involve some standing, which the ALJ acknowledges causes "intermittent fainting" in plaintiff. The ALJ erred in assuming that work performed in a seated position would eliminate all risk of fainting.

In sum, the Commissioner has not carried his burden to show that plaintiff can perform the sedentary occupations identified by the VE. Remand is therefore appropriate. *Martin v. Schweiker*, 562 F. Supp. 912, 917 (D. Kan. 1982) (remanding where the Secretary of Health and Human Services "failed to meet his burden of showing specific work that claimant could do once it was determined claimant could not return to his previous occupation"). The ALJ's reconsideration of plaintiff's RFC in light of the VE's testimony that employers would not tolerate any more than two fainting episodes per year will provide the ALJ with the opportunity to reassess the totality of evidence supporting plaintiff's RFC. Therefore, the Court will not address plaintiff's arguments that the ALJ erred in not considering the corroborating testimony of plaintiff's cousin, improperly found plaintiff not credible, and failed to consider whether the figures provided by the VE satisfied the ALJ's burden to show that plaintiff was capable of performing work that existed in significant numbers in the national economy. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

### 2. The ALJ's Credibility Determination

While the Court need not, and does not, rule on whether the ALJ's credibility determination is supported by substantial evidence, the Court addresses this issue briefly to guide the Commissioner on remand.

The ALJ found that plaintiff was not credible in large part due to the lack of reported observations of plaintiff's dizziness and fainting spells in the record. R. at 15 ("the medical reports do not indicate that the claimant experienced any fainting spells or

blackouts while he was in the hospital"), 15-16 ("[t]he medical notes do not indicate that the claimant [sic] symptoms of dizziness or fainting were observed at any of his follow-up appointments or hospital admissions, despite his claim that he has blackouts 30 to 40 times per day").  The Court, however, notes at least two hospital records apart from the tilt table test where plaintiff's treaters observed him losing consciousness, *id.* at 240 ("Pt then asked to stand.  Pt immediately lost consciousness and slid to the floor"); 276 (noting that "when patient was stood up . . . patient collapsed without any premonition. . . . Did have a loss of consciousness"), and a third instance where plaintiff was observed collapsing upon standing.  *Id.* at 290 ("When attempt was made to have him stand up, he suddenly collapsed and fell").  The ALJ did not discuss any of these instances in reaching his findings as to the severity of plaintiff's impairment.

The Court reaches no conclusion as to whether the above-referenced evidence renders credible plaintiff's testimony as to the frequency of his fainting episodes.  However, on remand the Commissioner is instructed to consider this evidence, as well as all other evidence in the record, to determine whether the frequency of plaintiff's fainting spells renders him unable to perform sedentary work.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED March 30, 2015.

                                BY THE COURT:

                                s/Philip A. Brimmer
                                PHILIP A. BRIMMER
                                United States District Judge